## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SELECT MANAGEMENT RESOURCES, LLC, a Georgia limited liability company, | ) ) ) ) Civil Action No. |
| Plaintiff, | ) ) |
| v. | ) ) |
| TITLE CREDIT ACCEPTANCE, LLC, a Georgia limited liability company, | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Select Management Resources, LLC ("Plaintiff") hereby brings this Complaint against Title Credit Acceptance, LLC ("Defendant") and shows the Court the following:

## NATURE OF THE ACTION

1.     This is an action for federal and state trademark and trade dress infringement and dilution, wrongful business practices, unfair competition, and false advertising arising out of Defendant's unauthorized use of Plaintiff's federally-registered trademark.

2.      Plaintiff seeks permanent injunctive relief and an award of damages, including but not limited to compensatory and punitive damages, as well as an award of its attorneys' fees and costs arising from Defendant's improper actions.

## PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff Select Management Resources, LLC is a limited liability company organized and existing under the laws of the State of Georgia, having its principal place of business at 3440 Preston Ridge Road, Suite 500, Alpharetta, Georgia 30005. Plaintiff owns the federally-registered "Loan Max" Trademark (the "LoanMax Mark"), and performs certain management functions for various title-loan lending companies that are licensed to use the LoanMax Mark (the "LoanMax Lenders"). Through the LoanMax Lenders, Plaintiff operates in, among other states, Arizona, Georgia, Missouri, and South Carolina. Plaintiff and the LoanMax Lenders are closely affiliated by common ownership and control.

4.      Defendant Title Credit Acceptance, LLC is a limited liability company organized and existing under the laws of the State of Georgia, having its principal place of business at 3150 Main Street, Suite 201, Duluth, Georgia 30096. Defendant is a title-loan lending company operating in Arizona, Georgia, Missouri, and South Carolina.

2

5.      This Court has personal jurisdiction over Defendant because Defendant is registered to do business, and actually conducts business, in the State of Georgia.  Additionally, this cause of action arises out of confusion that is occurring within the State of Georgia, in this judicial district.  Defendant may be served with process by serving its registered agent, F. Lee Champion, III, 1111 Bay Avenue, Third Floor, Columbus, Georgia 31901.  Defendant is therefore subject to the jurisdiction of this Court.

6.      This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1338(a) and (b), and principles of supplemental jurisdiction.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## STATEMENT OF FACTS

8.      Plaintiff owns all right, title, and interest in the LoanMax Mark, United States Patent and Trademark Office Registration No. 3,084,648, which is a mark registered in International Class 036.  The LoanMax Mark encompasses the use of the words "Loan Max."  A true and correct copy of the LoanMax Mark Registration Certificate is attached hereto as Exhibit "A."

9.      Plaintiff has licensed the LoanMax Lenders to use the LoanMax Mark.  Plaintiff, which is closely affiliated with the LoanMax Lenders due to

3

common ownership, supervises, manages, and controls the LoanMax Lenders' use of the LoanMax Mark.

10.     The LoanMax Lenders, under Plaintiff's supervision, management and control, have engaged in extensive advertising, marketing, and promotion of their identity, products, and services throughout the United States using the LoanMax Mark. Certain of their advertising, marketing, and promotion include the use of the LoanMax Mark on the internet.

11.     Because of the uniqueness of the LoanMax Mark, the widespread advertising, marketing, and promotion of the LoanMax Mark, and the successful development of marketing programs and related title-lending services, the LoanMax Mark, in addition to being inherently distinctive, has acquired secondary meaning as being representative in the quality of excellence associated with Plaintiff and the LoanMax Lenders.

12.     Plaintiff and the LoanMax Lenders have expended significant amounts of money to advertise, publicize, and promote their services since at least 2006. Indeed, Plaintiff is the senior user of the LoanMax Mark on the internet and in every state in which the LoanMax Lenders conduct business.

13.     As a result of those advertising and promotional efforts, and the consistent high quality of the LoanMax Lenders' services, its mark has acquired

and now enjoys a high degree of distinctiveness.  This mark is recognized by Plaintiff's and the LoanMax Lenders' customers and other members of the public as identifying exclusively the LoanMax Lenders' title-loan services.

14.    Defendant has wrongfully and intentionally used the LoanMax Mark to advertise, publicize, and promote its services via the Google Adwords program, without the consent, permission, or ratification of Plaintiff.

15.    Upon information and belief, Google Adwords is a keyword-triggered online advertising program that generates the "Sponsored Links" section of a search-results page generated by Google's search engine.  Entities may purchase or bid on certain keywords through the Adwords program, paying Google for the right to have those certain keywords facially incorporated into the language of their own, unique, sponsored link.

16.    Upon information and belief, Defendant purposefully and intentionally acquired and/or purchased the right to facially incorporate the keywords "Loan Max" and/or "LoanMax" into the plain language of Defendant's own, unique, sponsored link.

17.    Thus, when any internet-user searches enters the keywords of "Loan Max" or "LoanMax" into Google's search engine (in a likely attempt to reach the LoanMax Lenders' websites) Defendant's sponsored link is the first result.

Defendant's sponsored link explicitly incorporates the LoanMax Mark, and reads "**LoanMax** – Turn your Title into Fast Cash – titlecredit.com." (Emphasis in original.) If selected, Defendant's sponsored link sends the user directly to Defendant's website. A true and correct copy of recent search-results pages generated by Google's search engine for keywords "LoanMax and "Loan Max" is attached hereto as Exhibit "B."

18.    Defendant intentionally used, and is currently using, the LoanMax Mark to promote its own title-loan services through its Google Adwords sponsored link. Plaintiff has not given consent or permission to Defendant for the use of the LoanMax Mark.

19.    Defendant's use of the LoanMax Mark infringes on the uniqueness of the mark and also constitutes trademark and trade dress infringement and dilution, wrongful business practices, unfair competition, and false advertisement.

20.    By using the LoanMax Mark, Defendant seeks to confuse the consuming public, and to trade off of the reputation that Plaintiff and the LoanMax Lenders acquired and developed through successful promotion of their services. Defendant benefits from this confusion, as Defendant is a less well-known identity, and has reaped ill-gotten gains from being associated with the services associated with the LoanMax Mark.

21.    As Defendant is directly using the LoanMax Mark in contravention of federal and state statutory and common law, the obvious conclusion is that Defendant's conduct has been deliberate, and that its trademark and trade dress infringement and dilution, wrongful business practices, unfair competition, and false advertisements are willful and intentional.  As a result, Plaintiff is entitled to a presumption that Defendant's use of the LoanMax Mark is causing a likelihood of confusion.

22.    While Defendant benefits from its scheme of deception, the harm to Plaintiff and to the consuming public is immediate.  Consumers and those desiring to obtain title-loan services offered through Plaintiff and the LoanMax Lenders will mistakenly blame Plaintiff.  As a result, the value of the LoanMax brand will be irreparably diminished and diluted.  Moreover, even if the consumers and do not get unsatisfactory results, Plaintiff is irreparably harmed merely by the fact that the reputation of the services associated with the LoanMax Mark is at the mercy of a competitor, and by the fact that the strength of the service mark and trade dress is being diluted.

23.    Unless enjoined by this Court, Defendant's trademark and trade dress infringement and dilution, wrongful business practices, unfair competition, and false advertisements will continue to cause a likelihood of confusion, leading

consumers to believe that Defendant's infringing marketing programs and assorted services are affiliated, connected, sponsored, approved, or otherwise associated with the LoanMax Lenders and Plaintiff's LoanMax Mark.

24.     Unless enjoined by this Court, Defendant's actions will continue to cause irreparable injury to Plaintiff, by confusing and deceiving consumers, disrupting relationships with customers, damaging reputations, and lessening the capacity of Plaintiff's LoanMax Mark to identify and distinguish title-loan services.

**COUNT I**
**Federal Unfair Competition and Trade Dress Dilution**
**(Lanham Act, 15 U.S.C. § 1125(a) and (c))**

25.     Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as if fully restated herein.

26.     Plaintiff's unique marketing approach, method and style of doing business, and use of the LoanMax Mark constitutes Plaintiff's trade dress, which is inherently distinctive or has acquired secondary meaning in the minds of existing and prospective customers.

27.     Plaintiffs' trade dress is primarily non-functional.

28.     Defendant and/or its agents have infringed and/or diluted Plaintiff's trade dress and are continuing to infringe and/or dilute Plaintiff's trade dress by

using the LoanMax Mark in connection with the sale and false advertising of title-loan services without the consent of Plaintiff.

29.     Defendant has used, and will continue to use, Plaintiff's LoanMax Mark to falsely advertise, cause confusion or mistake, derive a benefit from Plaintiff's and the LoanMax Lenders' business and reputation, and promote its financial products and services in direct competition with Plaintiff and the LoanMax Lenders in the same channels of trade and marketing.

30.     Such use by Defendant is deliberate, willful, and without the consent of Plaintiff.

31.     As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff is likely to be substantially injured in its business, including the reputation of the LoanMax Mark, resulting in lost revenues and profits, and the diminished goodwill and reputation of itself and the LoanMax Lenders.

32.     Plaintiff has no adequate remedy at law to prevent such dilution and unfair competition.

33.     Unless enjoined by the Court, Defendant will continue to infringe on the Plaintiff's trade dress, and injunctive relief is therefore required to prevent Defendant's continued dilution and unfair competition and to ameliorate and mitigate the injury to Plaintiff.

## COUNT II
### Federal Trademark Infringement
### (Lanham Act, 15 U.S.C. § 1114)

34.     Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as if fully restated herein.

35.     The appearance of the LoanMax Mark is inherently distinctive and/or has acquired secondary meaning in the minds of Plaintiff's the LoanMax Lenders' existing and prospective customers, causing them to associate title-loan services bearing the LoanMax Mark with Plaintiff and the LoanMax Lenders.

36.     Defendant and/or its agents have infringed the LoanMax Mark and are continuing to infringe the LoanMax Mark by using the LoanMax Mark in connection with the sale and false advertising of title-loan services without the consent of Plaintiff.

37.     Defendant has used, and will continue to use, Plaintiff's LoanMax Mark to cause confusion or mistake, derive a benefit from Plaintiff's and the LoanMax Lenders' business and reputation, and promote its financial products and services in direct competition with Plaintiff and the LoanMax Lenders in the same channels of trade and marketing.

38.     Such use by Defendant is deliberate, willful, and without the consent of Plaintiff.

39.     As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff is likely to be substantially injured in its business, including the reputation of the LoanMax Mark, resulting in lost revenues and profits, and the diminished goodwill and reputation of itself and the LoanMax Lenders.

40.     Plaintiff has no adequate remedy at law to prevent such infringement.

41.     Unless enjoined by the Court, Defendant will continue to infringe on the LoanMax Mark, and injunctive relief is therefore required to prevent Defendant's continued infringement and to ameliorate and mitigate the injury to Plaintiff.

## COUNT III
### Federal Common Law Trademark Infringement and Unfair Competition

42.     Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as if fully restated herein.

43.     Plaintiff is the senior user of the LoanMax Mark on the internet and in every state in which the LoanMax Lenders conduct business.

44.     Defendant and/or its agents have infringed on Plaintiff's LoanMax Mark and are continuing to infringe on the LoanMax Mark by using the LoanMax Mark in connection with the sale and false advertising of title-loan services without the consent of Plaintiff.

45.     Defendant has used, and will continue to use, Plaintiff's LoanMax Mark to falsely advertise, cause confusion or mistake, derive a benefit from Plaintiff's and the LoanMax Lenders' business and reputation, and promote its financial products and services in direct competition with Plaintiff and the LoanMax Lenders in the same channels of trade and marketing.

46.     Such use by Defendant is deliberate, willful, and without the consent of Plaintiff.

47.     As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff is likely to be substantially injured in its business, including the reputation of the LoanMax Mark, resulting in lost revenues and profits, and the diminished goodwill and reputation of itself and the LoanMax Lenders.

48.     Plaintiff has no adequate remedy at law to prevent such infringement and unfair competition.

49.     Unless enjoined by the Court, Defendant will continue to infringe on the LoanMax Mark, and injunctive relief is therefore required to prevent Defendant's continued infringement and unfair competition and to ameliorate and mitigate the injury to Plaintiff.

<u>**COUNT IV**</u>
**Georgia Common Law Trademark Infringement**

50.    Plaintiff repeats and realleges the foregoing paragraphs of this
Complaint as if fully restated herein.

51.    Plaintiff is the senior user of the LoanMax Mark on the internet and in
every state in which the LoanMax Lenders conduct business.

52.    Defendant and/or its agents have infringed and/or diluted Plaintiff's
trade dress and are continuing to infringe and/or dilute Plaintiff's trade dress by
using the LoanMax Mark in connection with the sale and false advertising of title-
loan services without the consent of Plaintiff.

53.    Defendant has used, and will continue to use, Plaintiff's LoanMax
Mark to falsely advertise, cause confusion or mistake, derive a benefit from
Plaintiff's and the LoanMax Lenders' business and reputation, and promote its
financial products and services in direct competition with Plaintiff and the
LoanMax Lenders in the same channels of trade and marketing.

54.    Such use by Defendant is deliberate, willful, and without the consent
of Plaintiff.

55.    As a direct and proximate result of the foregoing acts, practices and
conduct, Plaintiff is likely to be substantially injured in its business, including the

reputation of the LoanMax Mark, resulting in lost revenues and profits, and the diminished goodwill and reputation of itself and the LoanMax Lenders.

56.     Plaintiff has no adequate remedy at law to prevent such infringement.

57.     Unless enjoined by the Court, Defendant will continue to infringe on the LoanMax Mark, and injunctive relief is therefore required to prevent Defendant's continued infringement and to ameliorate and mitigate the injury to Plaintiff.

**COUNT V**
**Georgia Trademark Dilution**
**(O.C.G.A. § 10-1-451(b))**

58.     Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as if fully restated herein.

59.     Defendant and/or its agents have diluted the LoanMax Mark and are continuing to dilute the LoanMax Mark by using the LoanMax Mark in connection with the sale and false advertising of title-loan services without the consent of Plaintiff.

60.     Defendant has used, and will continue to use, Plaintiff's LoanMax Mark to falsely advertise, cause confusion or mistake, derive a benefit from Plaintiff's and the LoanMax Lenders' business and reputation, and promote its

financial products and services in direct competition with Plaintiff and the

LoanMax Lenders in the same channels of trade and marketing.

61.     Such use by Defendant is deliberate, willful, and without the consent

of Plaintiff.

62.     As a direct and proximate result of the foregoing acts, practices and

conduct, Plaintiff is likely to be substantially injured in its business, including the

reputation of the LoanMax Mark, resulting in lost revenues and profits, and the

diminished goodwill and reputation of itself and the LoanMax Lenders.

63.     Plaintiff has no adequate remedy at law to prevent such dilution.

64.     Unless enjoined by the Court, Defendant will continue to dilute the

LoanMax Mark, and injunctive relief is therefore required to prevent Defendant's

continued dilution and to ameliorate and mitigate the injury to Plaintiff.

**COUNT VI**
**Georgia Unfair Competition**
**(O.C.G.A. § 23-2-55)**

65.     Plaintiff repeats and realleges the foregoing paragraphs of this

Complaint as if fully restated herein.

66.     Defendant and/or its agents have, and will continue to, encroach on

Plaintiff's title-loan business and licensing of the LoanMax Mark by using the

LoanMax Mark in connection with the sale and false advertising of title-loan services without the consent of Plaintiff.

67.     Defendant has used, and will continue to use, Plaintiff's LoanMax Mark to falsely advertise, cause confusion or mistake, derive a benefit from Plaintiff's and the LoanMax Lenders' business and reputation, and promote its financial products and services in direct competition with Plaintiff and the LoanMax Lenders in the same channels of trade and marketing.

68.     Such use by Defendant is deliberate, willful, and without the consent of Plaintiff.

69.     As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff is likely to be substantially injured in its business, including the reputation of the LoanMax Mark, resulting in lost revenues and profits, and the diminished goodwill and reputation of itself and the LoanMax Lenders.

70.     Plaintiff has no adequate remedy at law to prevent such unfair competition.

71.     Unless enjoined by the Court, Defendant will continue its conduct, and injunctive relief is therefore required to prevent Defendant's continued unfair competition and to ameliorate and mitigate the injury to Plaintiff.

## COUNT VII
### Georgia Deceptive Trade Practices & Georgia Unfair Business Practices
### (O.C.G.A. §§ 10-1-370 through 10-1-375; 10-1-390 through 10-1-490)

72.     Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as if fully restated herein.

73.     Defendant and/or its agents have engaged in unfair business and deceptive trade practices by passing off Defendant's title-loan services as those affiliated with the LoanMax Mark and disparaging the services provided by the LoanMax Lenders by falsely representing Defendant's association with the LoanMax Mark in connection with the sale and false advertising of title-loan services without the consent of Plaintiff.

74.     Defendant has used, and will continue to use, Plaintiff's LoanMax Mark to falsely advertise, cause confusion or mistake, derive a benefit from Plaintiff's and the LoanMax Lenders' business and reputation, and promote its financial products and services in direct competition with Plaintiff and the LoanMax Lenders in the same channels of trade and marketing.

75.     Such use by Defendant is deliberate, willful, and without the consent of Plaintiff.

76.     As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff is likely to be substantially injured in its business, including the

reputation of the LoanMax Mark, resulting in lost revenues and profits, and the diminished goodwill and reputation of itself and the LoanMax Lenders.

77.    Plaintiff has no adequate remedy at law to prevent such deceptive trade and unfair business practices.

78.    Unless enjoined by the Court, Defendant will continue to engage in deceptive and unfair practices, and injunctive relief is therefore required to prevent Defendant's such practices and to ameliorate and mitigate the injury to Plaintiff.

## COUNT VIII
### Georgia False Advertising
### (O.C.G.A. §§ 10-1-420 through 10-1-427)

79.    Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as if fully restated herein.

80.    Defendant and/or its agents used of Plaintiff's LoanMax Mark in Defendant's Google Adwords advertisements in order mislead and trick the public into believing that the financial products and services offered by Defendant are related to, sponsored by, or affiliated with the LoanMax Lenders, and that Plaintiff and/or the LoanMax Lenders share a corporate history or are affiliated with Defendant.

81.    Defendant's advertisements were false and untrue, as Defendant knew it was not authorized to use the LoanMax Mark or represent that its services were

affiliated with the LoanMax Lenders or Plaintiff. Such ongoing use by Defendant is deliberate, willful, and without the consent of Plaintiff.

82.    The foregoing conduct and advertisements of Defendant had a material effect on the purchasing decisions of prospective consumers of title-loan services.

83.    Defendant has used, and will continue to use, Plaintiff's LoanMax Mark to falsely advertise, cause confusion or mistake, derive a benefit from Plaintiff's and the LoanMax Lenders' business and reputation, and promote its financial products and services in direct competition with Plaintiff and the LoanMax Lenders in the same channels of trade and marketing.

84.    As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff is likely to be substantially injured in its business, including the reputation of the LoanMax Mark, resulting in lost revenues and profits, and the diminished goodwill and reputation of itself and the LoanMax Lenders.

85.    Plaintiff has no adequate remedy at law to prevent such dilution and unfair competition.

86.    Unless enjoined by the Court, Defendant will continue to promulgate false advertisements, and injunctive relief is therefore required to prevent

Defendant's continued advertisements and to ameliorate and mitigate the injury to Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Court for judgment as follows:

a)      Judgment finding, adjudging, and decreeing that Defendant has violated the Lanham Act, Federal and Georgia common law, and Georgia statutory law as set forth herein;

b)      Judgment directing Defendant to compensate Plaintiff for damages incurred as a result of Defendant's trademark and trade dress infringement and dilution, wrongful business practices, unfair competition, and false advertisements in an amount to be determined at trial;

c)      Judgment directing Defendant to account for and disgorge the profits derived from its unlawful acts, in accordance with 15 U.S.C. §1117(a);

d)      Judgment directing Defendant to compensate Plaintiff for the attorneys' fees, expenses, and costs incurred in pursuing their claims for trademark and trade dress infringement and dilution, wrongful business practices, unfair competition, and false advertisements based on Defendant's willful and knowingly false and misleading conduct, in accordance with 15 U.S.C. §1117(a).

e)      That a temporary injunction and preliminary injunction issue, pursuant Fed. R. Civ. P. 65 or other applicable law, enjoining, restraining, and prohibiting Defendant, its agents, and any person acting in concert with it from using the phrases "Loan Max" or "LoanMax" in their Google Adwords sponsored link advertisements;

f)      That a temporary injunction and preliminary injunction issue, pursuant to the Lanham Act and Fed. R. Civ. P. 65, enjoining, restraining, and prohibiting Defendant from directly or indirectly soliciting, diverting, taking away or attempting to divert or take away any existing customers of Plaintiff and the LoanMax Lenders;

g)      That upon a final hearing in this case, the temporary injunction and preliminary injunction be made a permanent injunction;

h)      Judgment granting Plaintiff prejudgment interest on the amounts awarded and such other and further relief as the Court may deem just and proper; and

i)      Judgment directing the Defendant to pay to Plaintiff the costs incurred herein, including reasonable attorneys' fees and expenses pursuant to Georgia law (including O.C.G.A. § 13-6-11) and federal statutory law.

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all triable issues of fact.

Respectfully submitted this 1st day of April, 2014.

WARGO & FRENCH LLP

/s/ Joseph D. Wargo
Joseph D. Wargo
Georgia Bar No. 738764
999 Peachtree Street NE
26th Floor
Atlanta, GA  30309
Phone:  (404) 853-1500
Fax:  (404) 853-1501
jwargo@wargofrench.com
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiff certifies that counsel have prepared the COMPLAINT in Times New Roman 14-point type, which is one of the font and point selections approved by the Court in Local Rule 5.1(B).

WARGO & FRENCH LLP

/s/ Joseph D. Wargo
Joseph D. Wargo
Georgia Bar No. 738764
999 Peachtree Street NE
26th Floor
Atlanta, GA  30309
Phone:  (404) 853-1500
Fax:  (404) 853-1501
jwargo@wargofrench.com
*Attorneys for Plaintiff*